This is American Honda. From biotech to pickups, Mr. Johnson. Good morning, your honors, counsel. May it please the court. My name is Scott Johnson. I represent the appellant, Mr. Felix, In this patent infringement matter, the district court has erred in three respects. First, the district court erred in its construction of the terms mounted and engaging, as those terms are used in the 625 patent. Second, the district court erred in granting summary judgment of no literal infringement, as there were genuine issues of material fact. And third, the district court erred in barring the application of the doctrine of equivalence. The district court erred in its construction of the terms mounted and engaging in the 625 patent. Mounted is generally understood, and its common and ordinary definition is positioned. That is the definition that should have been applied here. Instead, the district court went much farther. The definition of mounted depends upon the context of the claim, doesn't it? In other words, you give the hypothetical in your brief that one mounts a horse, but that doesn't mean one is permanently attached to it. Now, I would have no problem with your case if this was a patent that would facilitate the mounting of horses, because no one's going to be permanently attached to a horse unless it's a statue out in the square here. But this is something else. This is something that you've got to put in a hole in the bed of a truck, and you want to put stuff in, and then you close it. And you want to be sure when you close it that it stays closed, and that it's not permeable by stuff in the atmosphere such as water, moisture, dust, anything. And therefore, don't you have to interpret the word mounted in light of the purposes of this invention, what we're dealing with here? I would agree with that, Your Honor. You do have to interpret the term mounted. Then why shouldn't mounted mean what the district court said? I mean, let's take an example. In this courtroom, up there on the back of this, there's a clock. And I think you could fairly say that that clock is mounted there. It's there all the time. Next month when we come in and sit here, it'll still be there. That's mounted. I would agree, Your Honor. However, that clock is probably easily removable. Much like most of the pictures. Well, I don't know how easily it would be removable. I mean, maybe all you have to do is take it off, but maybe it's attached. I don't know. But certainly, if someone has a deer head in their office sitting over their desk, that's mounted there, and it's intended to be permanently affixed. Well, and I will confess, Your Honor, I have not attempted to remove the clock. But in Claim 6, which is the claimant issue here, mounted is used in the manner in which we describe it. But it's used in several places. The compartment's mounted on the bed. Now, that means it's affixed, right? It's there solid. It is not just merely positioned so that it can be moved around. It is securely affixed and attached. You also have the lid mounted. That lid, of course, is not just positioned. It is affixed or it won't work. Well, actually, Your Honor. So the three other uses of mounted are inconsistent with the definition you want us to use for the flange. I would submit here, Your Honor, that they are not. In fact, when the applicant wanted to require some type of permanent securement or permanent placement, he gave the public here in the specification a manner in which to do that. For example, with the cable, he mentioned that you can use clips to permanently place that cable on the lid. For the compartment that is in the bed, he mentioned that, for example, you can weld that compartment to the bed. It's mounted on the bed. It's affixed. It's attached. It's secured. Well, I respectfully disagree. And why isn't the same use, using the same word, why doesn't that apply to the gasket in the flange? It's affixed. It's attached. The gasket is never described as being glued or stapled or otherwise affixed. And, in fact, Figure 4, the figure that shows a close-up of where this gasket is at, merely shows that the gasket is pressure fit. And that's consistent with how mounted is used in Claim 6. We go back to the lid. And the lid is described as having lid mounting means that mount the lid in covering relation to the opening. Now, if the lid were permanently affixed to the opening, the purpose of the trunk would be useless. You'd never be able to open that lid because the lid is not permanently affixed. It is merely placed in covering relation to the opening. That way, you can actually open the lid and use the trunk. Much like the gasket here, which is just merely pressure fit, the gasket is not ever described as welded or clipped. It is merely described as being mounted on the flange, not to the flange. And that's an important difference. With respect to the term engaging, you question the district court's construction of engaging to mean coming together and interlocking. Correct. And even if you're right that interlocking is one word too many, what difference does that make? Well, in this infringement scenario, I don't know that it does make much difference because all Honda did here was take the gasket and instead of putting the clip on the bottom, put the clip on the top. So if we look at engaging and use the court's definition of interlocking, Honda has still engaged or interlocked its gasket with that lid. But that's inconsistent with how it's discussed and used in the 625 patent. In the 625 patent, interlocking is really a term that describes how parts interact. And it describes how the gasket interacts with the lid. The purpose of the gasket is to be weathertight. And when the gasket is described in the 625 patent, it is described merely as the gasket. But even if the district court was inartful in using the word interlocking and meant simply that it made contact, such as to prevent moisture or dust to come into the trunk, what difference does it make to your case? Well, again, I don't know that it makes a difference to the case with regard to Honda as the defendant. But in the future, if there are other defendants, we don't want to have a construction of this term that would be binding against us that may prevent other cases of infringement. And it's contrary to the 625 patent's teaching. Nowhere in the 625 patent is the gasket ever described as interlocking with anything. Fair enough. So your concern is not necessarily this case, but maybe the next case, and you don't want to... If we were to uphold the district court's construction of these terms, do you still have any claim of literal infringement? We do, Your Honor. Here there are genuine issues of material fact. Claim 6 must be viewed with the lid closed. It's the only configuration that is discussed in the claim. After all, the lid is described as being in covering relation with the opening, not as being held up in some various position. The lid is in covering relation. It is closed. Similarly, with the gasket limitation, the gasket describes the position of the trunk in its closed position. And when it is in its closed position, just like Mr. Felix's invention in the 625 patent, Honda's gasket is compression fit. But the claim term in its closed position modifies engaging, not mounting. I respectfully disagree, Your Honor. How can you do... laws of grammar require you to attach a phrase to its nearest antecedent verb. How can you jump the English language? Well, I'm not attempting to jump the English language. I'm just attempting to find out what configuration this claim is discussing. The closed position is the only position that is discussed in this claim. What about the limitation C that talks about the compartment interior being accessible through an opening? You can't do that if it's closed. Well, but the lid is described in this claim as being in covering relation. So, while the lid is hingently mounting, that compartment may be accessible if and when you open the lid. But here, it is described in this configuration as closed. It's accessible when the lid is open, and when it's closed, the gasket engages the lid. Isn't that the normal way to read this claim? That is, Your Honor. But here, the gasket is modified by another word, weathertight. A gasket is never weathertight if the lid is open. And in the 65 patent specification, the gasket is merely discussed as being the gasket. But the purpose of all of this is to make sure that you have a tight seal between the lid and the opening. That is correct. That is the purpose of all of this. If it's not tightly sealed, the whole thing won't work. That's exactly right. And I would submit to the Court that the trunk is never tightly sealed when the lid is open. Instead, the proper configuration to look for is the normal configuration. Nobody drives around with their trunk lid open. They drive around with the trunk lid closed because they want their materials protected. In the few minutes you have left, would you address the doctrine of equivalence and the prosecution history estoppel issue? Yes, Your Honor, and thank you very much. The doctrine of equivalence should have been applied here because it was error to bar the application. The prosecution history here shows that two amendments were made to what ultimately resulted as Claim 6. The First Amendment added two limitations, a gasket limitation and a channel limitation. However, the only argument that was made by the applicant during prosecution was that the claim that had the gasket and the channel limitations distinguished over the prior art because the prior art lacked any channel. You said there were two changes. The claim that issued as Claim 6 was presented during prosecution as Claim 16, correct? That is correct. It was presented as Claim 16, which rewrote Claim 8. That is correct, Your Honor. And Claim 8 was dependent from Claim 7, which was dependent from Claim 1. So Claim 8, in effect, is the original Claim 8, with the exception of the means for change. It is essentially the same as allowed Claim 6. That is correct, Your Honor. And that claim was indicated as containing allowable subject matter from Day 1. That is correct, Your Honor. And the only thing that distinguished that from its parent claims, 1 and 7, was the drain hole limitation. That is correct, Your Honor. The drain hole limitation was part of the original Claim 8. The phrases used to describe that drain hole limitation are exactly the same as original Claim 8, and Claim 8 was rewritten essentially in independent form as new Claim 16, and it was always indicated as allowable. So it seems to me there are some striking parallels with the Honeywell case, and if so, that there is prosecution history estoppel with respect to what was contained in Claim 8, namely the drain hole. That was the subject matter, in effect, added to secure allowance over parent claims 1 and 7. Your Honor, I see I'm into my rebuttal time. Please. Thank you. I would agree with that, Your Honor. In fact, this is much more like the Warner Jenkinson case, in which the process was amended to require a pH between 6 and 9, and the argument was made that the invention was now distinguishable over the prior art, which only cited pHs of greater than 9. There was no mention of any reason why the lower limit of 6 was added. Instead, and the doctrine of equivalence was allowed to be applied there. Like this case here, the only argument that was made with regard to Claim 14 and why it was allowable was related to the channel limitation, and even that didn't fly, so ultimately we are left with the drain hole limitation, which was added. Thank you, Your Honor. Thank you. Mr. Johnson, Mr. Caracappa. Good morning, Your Honor. It pleases the Court. My name is John Caracappa. I represent the appellees, American Honda, Honda R&D, and Honda of Canada Manufacturing. There are three issues before the Court. There's issues of claim construction, issues of no literal infringement, and issues of prosecution history estoppel. As the Court noted, mount, or a version of mount, mounted is used 21 times in the claim. Can I ask you to start and treat this in reverse order and start with the prosecution history estoppel? Yes, Your Honor. And why is this not like Honeywell, where the subject matter added to secure allowance of the claim that we're talking about here is the subject matter that was contained in Claim 8, the drain hole. Isn't that the territory to which resort to the doctrine of equivalence should be foreclosed, as opposed to the gasket limitation? Thank you, Your Honor. I think Honeywell has been at this Court a number of times. Initially, the Honeywell case said that there is a presumption of prosecution history estoppel with respect to the amendment to the claim. And I'd like to take the Court through the evolution of the claim. And the Court's correct. Well, to get to the point, there ought to be estoppel on mounted because the applicant canceled his independent claim, including mounted, and rewrote it as Claim 14, right? That's exactly right. So mounted was amended. Exactly. In order to escape a patentable objection. That's exactly right. So he narrowed the mounted element, and therefore the festo applies. Exactly. And the parties agree. But it didn't succeed in overcoming any rejection. No, that's right, Your Honor. He didn't. But the fact is the parties agree that the presumption applies to that amendment. The presumption applies to the fact that he added the recitation of a specific structure, a gasket mounted on the flange. So the next step is, and the parties agree that that presumption applies. So the next step is can he overcome that presumption? In order to overcome that presumption, he must prove somewhere in the record that the amendment in its entirety is only tangentially related to the accused equivalent. The accused equivalent in the Honda system is the channeling structure. That is the amendment. That is the subject of the amendment that was added in order to gain allowance of the claim. Now, Mr. Felix thinks that he can overcome the presumption by arguing today that that particular claim limitation, the limitation that the gasket be mounted on the flange, wasn't necessary to gain allowance. And that's not the case law. The case law is that the tangential exception is very narrow and it must be objectively apparent from the prosecution history. And it's clear from the prosecution history that at the time of the amendment, Mr. Felix believed that he was required to recite a channeling system with a gasket mounted on the flange of that channel. And I'd like to refer you, Your Honor, to the appendix, and it's Appendix A-494. And it's Mr. Felix's response to the examiner's rejection. In arguing that the channel system was patentable, Mr. Felix states that the references do not show the channel of Claim 7, which included the limitation of the gasket mounted on the flange, which is formed at the rim of the bed opening, in combination with the other structures of Claims 1 and Claim 7. So clearly, in arguing for the patentability of the claim, Mr. Felix felt that he was required to recite a channeling system with a gasket mounted on the flange of a channel, which is located at the rim of the bed opening. And this is entirely consistent with the public notice function. Mr. Felix is required to draft a claim to subject matter that he believes he is entitled to. Why are we talking about Claim 7 when Claim 6 is essentially Claim 8 rewritten in independent form? Claim 8 was presented originally, and let's just assume for purposes of discussion, Claims 1 and 7 were one claim and was a parent claim for Claim 8. And then the examiner says, well, your parent claim is not allowable, but Claim 8 would be allowable if rewritten in independent form. Eventually, it is rewritten in independent form and allowed, and that's what we have here. Two points, Your Honor. We would not be talking about any restrictions on resort to the doctrine of equivalence for any of the limitations that were in the parent claim. A couple of points. But here, why are we talking about a restriction on the doctrine of equivalence with respect to one of the limitations in the parent claim to with the limitation in Claim 7? A couple of points, Your Honor. First, I don't think that's an issue before the Court because the parties agree that there is a presumption associated with the claim element that contains the gasket mounted on the flange. But if you would like to take that analysis, I think what you have to do is you have to look at the parent claim as Claim 1, filed Claim 1. Filed Claim 1 was the subject matter that Mr. Felix thought he was originally entitled to. And that recited the concept, the idea of a compartment underneath the bed of a truck. Examiner said that subject matter is obvious in view of Cooper and Williams. So what Mr. Felix did was he said, okay, I'm going to add this channeling system. This channeling system, which is subjects of Claim 7 and 8, filed Claim 7 and 8, has a channel located at the rim, a gasket mounted on the channel, engaging the lid when it's in its closed position, and drain holes. Examiner said, I'm going to require you to add all those limitations to the channeling system. Mr. Felix disagreed. He didn't think he had to add the drain holes, which is why we have the subject of this particular amendment that I just cited. So the parties agree that the presumption applies to elements E, F, and G of Claim 6. The only issue is can Mr. Felix overcome the presumption? And he attempts to do that by arguing today that he didn't have to include every single recitation of structure as is issued in the ultimate claim. And again, that's not the test. The test is what at the time, well, the test is actually, let me step back, look at the amendment in its entirety. The amendment in its entirety, this claim structure, is directly related to the structure that Mr. Felix believes is the equivalent in question. So he cannot overcome the presumption. Even if the court wants to focus on what Mr. Felix believes he needed to gain allowance of the claim, it's clear from that portion of the record that Mr. Felix believes he had to have a channel mounted on the flange. I'm sorry, a gasket mounted on the flange of the channel. It's irrelevant today, looking at the prior art, what Mr. Felix could or could not have claimed. Thank you, Your Honor. With respect to no literal infringement, unless the court has any questions on the prosecution history estoppel, the district court properly concluded that the gasket has to be mounted on the flange of the channel. Honda's inbed trunk does not have a gasket mounted on the flange of the channel. And I'd like to direct the court to the red brief here on our page 37. And this has a picture of the channel system recited in Claim 6, and the channel system that Mr. Felix has believed to be the alleged equivalent in the inbed trunk. These systems are entirely different. They don't function in the same way. Felix has one channel. Honda has a series of channels. Felix has drain holes that drain directly into the bed. Honda's do not. Honda's system works. Mr. Felix's does not. But the issue here is, is the gasket mounted on the flange of the channel as is required by the claim? And it's not. The district court agreed. Now, Mr. Felix's argument for literal infringement is one argument in two parts. He says, first, what you do is you only look at the claim, you only look at the accused structure in its closed position. As the court correctly pointed out, that makes absolutely no sense, because you then don't have a compartment interior accessible through said opening. It's also contrary to laws of grammar, as recognized by the Supreme Court. In its closed position is a modifying phrase that only modifies engaging said lid. It does not modify a weathertight gasket mounted on said flange. If the court adopts that, if the court ignores that and says, okay, let's just look at it in its closed position, the gasket of the in-bed trunk is still not mounted to the flange of a channel in the accused product. If it were, you would never be able to open the lid. The claim would read, a weathertight gasket mounted on the flange and mounted on the lid, and engaging said lid in its closed position. It doesn't make any sense. The claim would be, the compartment would be useless. I have an example that I think is demonstrative. If I take a sponge, which has properties similar to the gasket in this case, and I put it on this podium, and I press down on that sponge, at no time does that sponge magically mount to the podium. It just doesn't make any sense. There is no literal infringement. The district court's position on this issue should be affirmed. Lastly, Your Honor, with respect to claim construction, mounted is used 21 times in the claims. It's used a number of times in the specification. In each and every instance, mounted must mean something more than positioned. It means securely affixed or fastened to. It's supported by all the intrinsic evidence, the specification, the prosecution, history. It's supported by the extrinsic evidence, the expert testimony, the dictionary definitions, prior decisions by this court. Mr. Felix allegedly has two pieces of evidence that support his construction of mounted as position. First thing he does is he goes to the dictionary and says, well, in some context, mounted does mean position. As Your Honor points out, what's critical is the context used in the 625 patent. Mounted also means a piece of jewelry by the same dictionary definition. Clearly, that's inapplicable. How do we know? It makes no sense in light of the claims, the specification, and the prosecution history. They say his expert says mounted means position. His expert does not say that mounted means position in the context of this claim. His expert does not say I've read the 625 patent, I've read Claim 6, I've read the prosecution history, and in light of all this evidence, mounted means position. What he says is mounted is defined a number of different ways in dictionaries. One of those ways is positioned. He never says that positioned is defined here in the 625 patent as mounted. Thank you, Your Honor. I have nothing else. Does the court have any questions? Thank the court for its time. What about the interlocking construction of engaged? Right, Your Honor. We agree with the court. As the court noted, that particular claim term is irrelevant for purposes of literal infringement. It's irrelevant for purposes of prosecution history estoppel. The district court did interpret the claim engaging to come together and interlock. The parties agree on a portion of that. The parties agree on at least it's coming together, which actually further supports the proposition that the lid must at least be open at some time because you can't come together unless two objects are sometime apart. That aside, I'm assuming the district court wants to focus on interlocking. It seems like the district court was perhaps inartful in selecting that word. Interlocking usually means that there's some capture or some kind of engagement that goes beyond simply touching, and that seems to be gratuitous at best. But I guess your argument is it doesn't make any difference. It's irrelevant even if the claim construction was wrong in this case. In this case, that's exactly right. But I will also say that we think the district court was correct. The gasket must more than come together in contact. There must be some sort of interlocking so that the structure, this gasket structure, doesn't allow any elements in between. Agreed, the district court could have used compressed in a way such that no water or air or pebbles get in between. But at the district court, Mr. Felix accused Honda of infringing two claims, Claim 2 and Claim 6. Claim 2 recites a catch interlocking or engaging with a latch. So what the district court had to do is interpret the term consistently as it's used throughout the patent. And the interlocking of the catch and the latch, the way I like to think of it, is if you have a hood to your car. When you put the hood down, there's often that little space. And that catch and that latch touch, but you have to push down. There has to be that interlocking. So the district court said that makes sense in the context of Claim 2. It also makes sense in the context of Claim 6, even though it's not ideal. Because there has to be more than a coming together. There must be an interlocking such that the engagement of the latch. So they stay together while it is closed, basically. Exactly, exactly. Not that it's permanently sealed. But you can't have it flopping up and down as the truck is driving around. That's exactly right, Your Honor. Thank you, Your Honor. Unless the court has any questions, we respectfully request that the Federal Circuit affirm the district court's construction of the claim to our mounted. They affirm that there is no literal infringement and affirm that the doctrinal prosecution has restated their claims. Thank you, Mr. Caracalla. Mr. Johnson, you have a minute and a half remaining. Thank you, Your Honor. I would refer the court also in the red brief to a different picture, a picture prepared by Honda. It is on page 45 of Honda's brief. And there it shows the lid in the closed position and Honda's device in the closed position. The gaskets are both located in the same spot. The gaskets are both in compression. The gaskets are both touching the flange and the lid, and they're both performing the same function. They both act to keep out moisture, to keep out pebbles, to keep the interior compartment safe and secure. Does the drain hole actually drain the moisture into the bed itself in your invention? Your Honor, there is one picture that shows a drain hole there. There is another picture that shows that the drain hole is not there. And so functionality of the device, enablement, is not an issue here. But I would submit there was a mistake in one of the drawings but not in the other. The purpose of the drain hole is to get rid of the water and make sure it doesn't run into the container down below. Exactly. That's exactly right. But in this particular figure, 14 shows it draining into the bed itself, right? That's right, Your Honor. It does here. But again, these are drawings that were prepared by Honda. These are altered drawings to show that the lid is closed here. And when that is done, the gasket is shown as mounted. Just like Mr. Caracappa's sponge, the gasket in Mr. Felix's patented device is only held there. But it's figure 4. It's your figure 4 that shows the drain hole draining into the bed. That's correct, Your Honor. But again, enablement has never been raised. That's right. Your Honor, for these reasons, appellant respectfully requests that the district court be reversed and this case be remanded for further proceedings. Thank you. Thank you, Mr. Johnson. I think that concludes our work for this morning. Thank you. Thank you. You may all rise. This court is adjourned until January 14th at 10 o'clock a.m. Thank you.